2021 IL App (1st) 200188-U

No. 1-20-0188

Order filed September 7, 2021.

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 81 C 540 |
| | ) | |
| KENNETH GHOLSTON, | ) | The Honorable |
| | ) | Alfredo Maldonado, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE LAVIN delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Howse concurred in the judgment.

**ORDER**

¶ 1    *Held*: Circuit court's denial of defendant's motion for leave to file a successive postconviction petition is affirmed where defendant's sentence did not violate the eighth amendment to the United States Constitution or the proportionate penalties clause of the Illinois Constitution under *Miller v. Alabama*, 567 U.S. 460 (2012), and its progeny because defendant was 24 years old at the time of the offense.

¶ 2    Defendant Kenneth Gholston appeals the circuit court's denial of his motion for leave to

file a successive petition under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West

2018)). Defendant's proposed successive postconviction petition argued his 120-year prison sentence violates the eighth amendment to the United States Constitution and the proportionate penalties clause of the Illinois Constitution under *Miller v. Alabama*, 567 U.S. 460 (2012), and related authority holding that juveniles and certain young adults cannot be sentenced to life in prison unless the sentencing court considers factors regarding youthful behavior and brain development. We affirm.

¶ 3    Defendant and eight codefendants were charged with rape (Ill. Rev. State. 1979, ch. 38, par. 11-1), deviate sexual assault (Ill. Rev. Stat. 1979, ch. 38, par. 11-3), two counts of indecent liberties with a child (Ill. Rev. Stat. 1979, ch. 38, pars. 11-4(a)(1),(2)), two counts of robbery (Ill. Rev. Stat. 1979, ch. 38, par. 18-1), five counts of aggravated battery (Ill. Rev. Stat. 1979, ch. 38, pars. 12-4(a), (b)(9)), and two counts of conspiracy to commit robbery (Ill. Rev. Stat. 1979, ch. 38, par. 8-2, 18-1). As defendant only challenges the denial of leave to file a successive postconviction petition attacking his sentence, we recite only those facts necessary to decide this appeal.

¶ 4    During a pretrial hearing on June 4, 1981, defendant testified he would be 25 years old the following day, June 5, 1981.

¶ 5    At trial, the evidence established 15-year-old D.T. and her friends Matthew Kennedy and Richard Fink were on the platform of a Chicago Transit Authority (CTA) train station at approximately 11:40 p.m. on December 27, 1980, when a group of four to five young men attacked and robbed Kennedy and Fink. During this attack, defendant, whom D.T. and Fink identified in court, approached her with another group of men and touched her breasts. The men removed D.T.'s clothing and pushed her down to the platform.

¶ 6     Defendant raped D.T. while the other men threatened to kill her unless she stayed quiet. He also attempted to rape her anally. Four of the codefendants then raped D.T. vaginally and orally on the platform. A fifth codefendant threw D.T. onto the train tracks, dragged her into the snow, and raped her. Police arrived shortly thereafter and arrested several of the codefendants on a CTA train. Defendant escaped but turned himself in approximately three weeks later and was arrested. In a statement to an assistant State's Attorney, defendant admitted participating in the robbery but denied raping D.T.

¶ 7     The jury found defendant guilty of rape, deviate sexual assault, one count of indecent liberties with a child, two counts of robbery, three counts of aggravated battery, and one count of conspiracy to commit robbery.

¶ 8     At the sentencing hearing, D.T. testified she began suffering from genital herpes approximately one week after this incident. In aggravation, the State argued this offense was "one of the most vicious attacks ever performed on an individual in the City of Chicago." The State characterized defendant as "the main actor," "the most vicious of the group," and "the person that initiated the sexual attack upon [D.T.]" The State also argued defendant's presentence investigation report (PSI) established he had been on parole for fewer than five weeks at the time of this offense and had "other prior convictions *** throughout the course of his adult life."[1]

¶ 9     In mitigation, defendant conceded his PSI was "a very bad story indeed," but argued he was "an impulsive person," "economically deprived," "socially backward," "rash," and "possibly psychotic." Defendant did not graduate from grade school or attend high school. He was addicted to heroin for 7 years, used cannabis for 15 years, and became an alcoholic upon his release from

_____

[1]Defendant's PSI is not included in the record on appeal.

prison in 1980. Defendant requested a behavioral clinical examination, which was denied. In allocution, defendant denied committing any crime.

¶ 10    The trial court sentenced defendant to a total of 258 years' imprisonment as follows: 60 years for rape, 60 years for deviate sexual assault, 30 years each for two counts of indecent liberties with a child, 14 years each for two counts of robbery, and 10 years each for five counts of aggravated battery, all sentences to be served consecutively.[2] The court explained it imposed the most serious penalty on defendant because he was "the leader in this event" and was "a danger to society [who] should never again be permitted to walk as a free man in this community."

¶ 11    On direct appeal, defendant challenged being tried with one of his codefendants, the admission of certain testimony, and whether the trial court considered his rehabilitative potential in passing sentence. *People v. Gholston*, 124 Ill. App. 3d 873, 887-96 (1984). We affirmed defendant's convictions but held he could not receive a sentence greater than the sum of the two most serious felonies pursuant section 5-8-2 of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005-8-4(c)(2)). *Id.* at 896-97. Thus, we modified defendant's sentence to provide for two consecutive terms of 60 years each for rape and deviate sexual assault for a total sentence of 120 years. *Id.* at 897.

¶ 12    In 1987, defendant filed his initial *pro se* postconviction petition, which alleged ineffective assistance of trial and appellate counsel, challenged the format of his trial on due process grounds and the admission of certain evidence, and argued his sentences were excessive. In 1993, defendant, through counsel, filed a motion to compel DNA testing of D.T.'s vaginal swabs and, in

---

[2]This calculation is based on defendant's original mittimus. *Gholston*, 124 Ill. App. 3d 873, 882 n. 3 (1984).

1995, defendant supplemented his postconviction petition with the same request for DNA testing. The circuit court denied and dismissed defendant's original and supplemental petitions and we affirmed. *People v. Gholston*, 297 Ill. App. 3d 415, 422 (1998).

¶ 13 In 1999, defendant filed a second *pro se* postconviction petition, which again sought DNA testing and argued counsel on direct appeal was ineffective. The circuit court summarily dismissed this postconviction petition. We affirmed and rejected defendant's attempt to challenge his sentences under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), for the first time on appeal. *People v. Gholston*, No. 1-99-3211 (2001) (unpublished order under Supreme Court Rule 23).

¶ 14 In 2004, defendant filed a third *pro se* postconviction petition, which challenged his sentences and argued ineffective assistance of counsel during the appeal of his initial postconviction petition. The circuit court dismissed this petition and we affirmed, granting appointed appellate counsel leave to withdraw under *Pennsylvania v. Finley*, 481 U.S. 551 (1987). *People v. Gholston*, No. 1-04-3319 (2005) (unpublished order under Supreme Court Rule 23).

¶ 15 In 2007, defendant filed a *pro se* petition for relief from judgment under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2006)), arguing his sentences were void. The circuit court dismissed this petition and we affirmed, granting appointed appellate counsel leave to withdraw under *Finley*. *People v. Gholston*, No. 1-08-0349 (2009) (unpublished order under Supreme Court Rule 23).

¶ 16 In 2013, defendant filed a fourth *pro se* postconviction petition, which argued his convictions for rape and deviate sexual assault violated the one-act, one-crime rule of *People v. King*, 66 Ill. 2d 551 (1977). The circuit court denied leave to file this successive postconviction petition. We affirmed but corrected the mittimus to reflect the modification to defendant's

sentences that occurred on direct appeal. *People v. Gholston*, No. 1-14-0634 (2015) (unpublished summary order under Supreme Court Rule 23).

¶ 17    In 2014, defendant filed a *pro se* petition for *habeas corpus* relief, which again argued his convictions violated the one-act, one crime rule. The circuit court dismissed this petition for failure to provide proof of service.

¶ 18    In 2015, defendant filed a second *pro se* 2-1401 petition, challenging his sentences under *Alleyne v. United States*, 570 U.S. 99 (2013). The circuit court denied this petition and we affirmed, granting appointed appellate counsel leave to withdraw under *Finley*. *People v. Gholston*, No. 1-16-1207 (2018) (unpublished summary order under Supreme Court Rule 23)

¶ 19    In 2018, defendant filed a *pro se* petition for DNA testing under section 116-3 of the Code of Criminal Procedure (725 ILCS 5/116-3 (West 2016)), which the circuit court denied.

¶ 20    In 2019, defendant filed a *pro se* motion for leave to file his fifth postconviction petition, which is at issue here. Defendant argued his aggregate 120-year sentence violates the eighth amendment to the United States Constitution and the proportionate penalties clause of the Illinois Constitution under *Miller* and its progeny. Defendant proceeded under the cause-and-prejudice test. As his cause for not raising these claims earlier, he cited recent developments in Illinois caselaw, specifically *People v. House*, 2015 IL App (1st) 110580, which he argued extended *Miller* protections against life sentences to "Young Adults" like himself under the proportionate penalties clause of the Illinois Constitution. Defendant argued he was prejudiced because he received an unconstitutional *de facto* life sentence. Defendant's petition claims he was 21 years old at the time of the offense, and an affidavit from a fellow inmate claims defendant said he was 19 years old at

the time of the offense. Defendant attached to his petition several articles regarding young adult criminal behavior and brain development.

¶ 21    The circuit court denied defendant leave to file his successive postconviction petition. The court explained the Illinois Department of Corrections website and documents in the case file established defendant was 24 years old at the time of the offense. Citing *People v. Harris*, 2018 IL 121932, the court concluded *Miller*'s eighth amendment-based analysis did not apply to defendant because he was over 18 at the time of the offense. The court also rejected defendant's proportionate penalties argument, distinguished *House*, and explained the articles defendant attached to his petition did not establish anything about his specific circumstances at the time of the offense.

¶ 22    Defendant filed a motion to reconsider, which was denied.

¶ 23    We allowed defendant to file a late notice of appeal.

¶ 24    On appeal, defendant argues the circuit court should have allowed him to file his successive postconviction petition because he met the cause and prejudice test. Specifically, defendant contends his "*de facto* life sentence violates the proportionate penalties clause of the Illinois Constitution, where the sentencing hearing failed to comply with the requirements of *Miller* and its progeny and [his] pleading established he was entitled to develop a record to establish whether he was entitled to *Miller* protections at age 24." He requests we remand for resentencing.

¶ 25    The Post-Conviction Hearing Act (725 ILCS 5/121-1 *et seq.* (West 2018)) provides a remedy to a criminal defendant whose federal or state constitutional rights were substantially violated at trial. *People v. Dupree*, 2018 IL 122307, ¶ 28. The Act contemplates only one postconviction proceeding per defendant. 725 ILCS 5/122-1(f) (West 2018); *People v. Robinson*, 2020 IL 123849, ¶ 42. However, a defendant may bring a successive postconviction petition where,

as relevant here, he asserts "cause and prejudice" for not raising the claim earlier. *People v. Davis*, 2014 IL 115595, ¶ 14; 725 ILCS 5/122-1(f) (West 2018). "Cause" means an objective, external factor that impeded the defendant's ability to raise the claim in an earlier proceeding. *Davis*, 2014 IL 115595, ¶ 14. "Prejudice" means a constitutional error that "so infected the entire trial that the resulting conviction violates due process." *Id.* A defendant must satisfy both prongs to prevail. *Id.*

¶ 26    A defendant seeking leave to file a successive postconviction petition must make a *prima facie* showing of cause and prejudice. *People v. Bailey*, 2017 IL 121450, ¶ 24. We take as true all well-pleaded facts in the petition and accompanying documentation unless they are positively rebutted by the record. *People v. Towns*, 182 Ill. 2d 491, 503 (1998). The circuit court should deny leave to file a successive postconviction petition when it is clear the defendant's claims fail as a matter of law. *People v. Smith*, 2014 IL 115946, ¶ 35. We review a circuit court's denial of leave to file a successive postconviction petition *de novo*. *Bailey*, 2017 IL 121450, ¶ 13.

¶ 27    Defendant's postconviction claim is premised on the United States Supreme Court's decision in *Miller* and the resulting line of federal and state cases. In *Miller*, the Court held a juvenile defendant cannot be sentenced to mandatory life without parole if the sentencing court does not give special consideration to factors related to the defendant's youth. *Miller*, 567 U.S. at 465. Such a sentence violates the eighth amendment's prohibition on cruel and unusual punishments. *Id.* The *Miller* Court based its reasoning on " 'developments in psychology and brain science continu[ing] to show fundamental differences between juvenile and adult minds' – for example, in 'parts of the brain involved in behavior control.' " *Id.* at 471-72 (quoting *Graham v. Florida*, 560 U.S. 48, 68 (2010)).

¶ 28    The Supreme Court of Illinois has held any prison sentence imposed upon a juvenile defendant that is longer than 40 years is a *de facto* life sentence to which *Miller* applies. *People v. Buffer*, 2019 IL 122327, ¶ 40. *Miller* applies to both mandatory and discretionary juvenile life sentences. *People v. Holman*, 2017 IL 120655, ¶ 40. *Miller* also applies retroactively in a postconviction challenge to a juvenile offender's life sentence. *Davis*, 2014 IL 115595, ¶ 42.

¶ 29    Our supreme court has held a defendant who was 18 years of age or older at the time of the offense cannot raise a *Miller* claim asserting a facial eighth amendment challenge to a life sentence because "the age of 18 is the legal line separating adults from juveniles." *Harris*, 2018 IL 121932, ¶¶ 58-61. That is, *Miller* and its progeny do not apply directly to defendants aged 18 or older. *Id.* ¶ 45.

¶ 30    However, recent authority indicates a defendant who was 18 to 21 years old at the time of the offense can raise an as-applied *Miller* challenge to a life sentence under the proportionate penalties clause of the Illinois Constitution in a postconviction petition. See, e.g., *Id.* ¶ 48; *People v. Thompson*, 2015 IL 118151, ¶ 44. When a defendant claims the evolving science discussed in *Miller* applies to him as a young adult between 18 and 21, the circuit court is the most appropriate tribunal for factual development. *Holman*, 2017 IL 120655, ¶¶ 29-30. "The record must be developed sufficiently to address [the] defendant's claim that *Miller* applies to his particular circumstances." *Harris*, 2018 IL 121932, ¶ 45.

¶ 31    We find defendant cannot establish prejudice because *Miller* and its progeny do not apply to him as a 24-year-old at the time of the offenses. The parties agree defendant was 24 years old at the time of the offense and the record supports that conclusion. At a hearing on June 4, 1981, defendant testified he would be "25 tomorrow," making June 5, 1956, his date of birth. Defendant's

criminal history, which is in the record on appeal, also indicates his date of birth is June 5, 1956. The Illinois Department of Corrections website, upon which the circuit court relied, indicates defendant's date of birth is May 5, 1956. Regardless of whether defendant was born in May or June 1956, he was 24 years old at the time of the offenses on December 27, 1980.

¶ 32      The eighth amendment protections of *Miller* do not apply to defendant because he was over 18 at the time of the offense. See *Id.*; *People v. Minniefield*, 2020 IL App (1st) 170541, ¶ 37 (the "categorical findings made by *Miller* and its progeny under the federal eighth amendment do not apply to" defendants over 18 at the time of the offense). Moreover, because he was 24 years old at the time of the offenses, defendant is "well past both the juvenile cutoff for eighth amendment *Miller*-based claims and the 18-to-21-year-old group of defendants who have asserted as-applied *Miller*-based claims under the proportionate penalties clause." See *People v. Robinson*, 2021 IL App (1st) 192289, ¶ 48 (not yet released for publication and subject to revision or withdrawal) (finding *Miller* protections did not apply to offender who was 24 years old at the time of the offense). No authority supports extending *Miller* protections under the proportionate penalties clause to a defendant who was 24 years old at the time of the offense. Indeed, this court recently explained any extension of *Miller* principles to defendants over 21 "should be made by our legislature or our highest court." *People v. Rivera*, 2020 IL App (1st) 171430, ¶ 27 (not yet released for publication and subject to revision or withdrawal). No such extension has yet occurred. Thus, defendant's *Miller* claims fail as a matter of law, and the circuit court properly denied him leave to file a successive postconviction petition.

¶ 33      Defendant contends "the protections of the proportionate penalties clause reserved for youthful offenders can extend to defendants over the age of 18." However, the cases he cites do

not support the extension of *Miller* protections to defendants who were 24 years old at the time of the offense, as he was. See, e.g., *People v. Lenoir*, 2021 IL App (1st) 180269, ¶ 55 (18-year-old defendant); *People v. Franklin*, 2020 IL App (1st) 171628, ¶ 5 (18-year-old defendant); *People v. Ruiz*, 2020 IL App (1st) 163145, ¶ 1 (18-year-old defendant); *People v. House*, 2019 IL App (1st) 110580-B, ¶ 17 (19-year-old defendant).[3]

¶ 34    *People v. Savage*, 2020 IL App (1st) 173135, appears to be the only reported decision extending *Miller* protections to a defendant older than 21. The *Savage* court relied on the fact the defendant, who was 21 years and 7 months old at the time of the offense, had been addicted to drugs since he was 9 years old and was using drugs daily at the time of the offense. *Savage*, 2020 IL App (1st) 173135, ¶¶ 71-76 (not yet released for publication and subject to revision or withdrawal). *Savage* does not support the extension of *Miller* protections to a 24-year-old like defendant in this case, and cases decided after *Savage* have rejected extending *Miller* protections to defendants older than 21. See, e.g., *Robinson*, 2021 IL App (1st) 192289, ¶ 48; *People v. Williams*, 2021 IL App (1st) 190535, ¶ 35 (not yet released for publication and subject to revision or withdrawal)**.** Accordingly, the circuit court properly denied defendant leave to file his successive postconviction petition.

¶ 35    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 36    Affirmed.

---

[3]*House*, upon which defendant relies heavily, is currently on appeal before our supreme court. *People v. House*, 140 N.E.3d 231 (table) (allowing petition for leave to appeal).